Lawrence J. Joseph
Cal. S.B. No. 154908
Law Office of Lawrence J. Joseph
1250 Connecticut Ave., NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

Counsel for *Amicus Curiae* Immigration Reform Law Institute

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Immigrant Legal Resource Center, *et al.*,
    *Plaintiffs*,

v.

Chad F. Wolf, Acting Secretary of Homeland Security, *et al.*,
    *Defendants*.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Civil Action No. 4:20-cv-05883-JSW**

**BRIEF OF *AMICUS CURIAE* IMMIGRATION REFORM LAW INSTITUTE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY *INJUNCTION AND STAY***

Date:   October 9, 2020
Time:   9:00 a.m.
Judge:  Hon. Jeffrey S. White
Ctrm:   5, 2nd Floor

---

**IMMIGRATION REFORM LAW INSTITUTE'S *AMICUS CURIAE* BRIEF,**
*Immigrant Legal Res. Ctr. v Wolf,* **No. 4:20-cv-05883-JSW**

## **TABLE OF CONTENTS**

Memorandum of Ponts and Authorites ..................................................................................................1
Identify and Interests of *Amicus Curiae* ............................................................................................1
Introduction .............................................................................................................................................1
Legal Standard ........................................................................................................................................2
Argument .................................................................................................................................................2
I.      Plaintiffs cANNOT PREVAIL ON THE MERITS. ...........................................................2
      A.      The Final Rule is not arbitrary and capricious. .........................................................3
      B.      The imposition of fees is consistent throughout the INA and federal law, which requires agencies to be self-sustaining as much as possible. .......................6
      C.      The Final Rule does not violate the government's obligations under the Convention Against Torture. ................................................................................7
II.     The remaining *Winter* factors weigh against Plaintiffs. ........................................................8
      A.      The balance of equities favors DHS. ........................................................................8
      B.      The public interest favors DHS. ................................................................................9
Conclusion ...............................................................................................................................................9

### MEMORANDUM OF PONTS AND AUTHORITES

*Amicus curiae* Immigration Reform Law Institute submits this memorandum of points and authorities in opposition to plaintiffs' motion for preliminary injunction and the plaintiffs' accompanying memo ("Pls. Memo") pursuant to Immigration Reform Law Institute's accompanying motion for leave to file.

### IDENTIFY AND INTERESTS OF *AMICUS CURIAE*

Immigration Reform Law Institute ("IRLI") is a nonprofit 501(c)(3) public interest law firm incorporated in the District of Columbia.  IRLI is dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens and lawful permanent residents, and to assisting courts in understanding and accurately applying federal immigration law.  IRLI has litigated or filed *amicus* briefs in important immigration cases, including *Trump v. Hawaii*, 138 S. Ct. 2392 (2018); *United States v. Texas*, 136 S. Ct. 2271 (2016); and *Arizona Dream Act Coal. v. Brewer*, 818 F.3d 101 (9th Cir. 2016). For more than twenty years, the Board of Immigration Appeals has solicited *amicus* briefs drafted by IRLI staff from IRLI's parent organization, the Federation for American Immigration Reform, because the Board considers IRLI an expert in immigration law.  For these reasons, IRLI has a direct interest in the issues here.

### INTRODUCTION

Plaintiffs seek a preliminary injunction barring Defendants from implementing a final rule, *U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements*, 85 Fed. Reg. 46,788 (Aug. 3, 2020) (the "Final Rule"), promulgated by the U.S. Department of Homeland Security ("DHS"), based on their challenge to the validity of the Final Rule under the Administrative Procedure Act, 5 U.S.C. § 706 ("APA").

---

1

**IMMIGRATION REFORM LAW INSTITUTE'S *AMICUS CURIAE* BRIEF,**
*Immigrant Legal Res. Ctr. v Wolf,* **No. 4:20-cv-05883-JSW**

IRLI supports DHS's determination that fees were set below the level necessary to recover the full costs of operating the immigration courts and the Board of Immigration Appeals ("BIA"). It reflected badly on the Executive Office of Immigration Review ("EOIR") that, with the knowledge and acquiescence of successive Attorneys General, the agency had knowingly underfunded these critical government functions for more than three decades, despite express congressional authorization to ensure that the historic growth in EOIR caseloads is supported by sufficient personnel and resources. Furthermore, IRLI commends the initiative of the current EOIR Director and Attorney General to restore EOIR's squandered revenue streams with the Final Rule. Collecting the fees associated with the Final Rule is a legal requirement that will provide the agency the opportunity to reduce chronic backlogs in processing filings.

IRLI supports the arguments of Defendants and adds the following with respect to the merits.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

## ARGUMENT

**I.    PLAINTIFFS CANNOT PREVAIL ON THE MERITS.**

The first *Winter* factor—the likelihood of success on the merits—is the most important factor as well as the factor on which plaintiff's claim fails. *Winter*, 555 U.S. at 20. Despite Plaintiffs' claims to the contrary, the Final Rule is neither arbitrary and capricious nor contrary to law and is thus entitled to this Court's deference.

### A. The Final Rule is not arbitrary and capricious.

As the Supreme Court has explained, "[r]eview under the arbitrary and capricious standard is deferential [to the agency]." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007). An action is only arbitrary and capricious where the agency

> has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Where, however, "an agency rule . . . is rational, based on consideration of the relevant factors, and within the scope of the authority delegated to the agency by the statute," it is not to be disturbed. *Id.* at 42-44. Where the agency's "decisionmaking path may be reasonably discerned," the court must reject any claims that the rule in question is arbitrary and capricious. *California v. Azar*, 950 F.3d 1067, 1103 (9th Cir. 2020) (internal citation omitted).

Furthermore, it is not the responsibility of the court to determine "whether a regulatory decision is the best one . . . or even whether it is better than the alternatives." *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 782 (2016). In fact, where the decision involves complex technical issues, as in *Elec. Power Supply Ass'n*, it is essential that the courts "afford great deference" to the agency's expertise. *Morgan Stanley Capital Grp. Inc. v. Pub Util. Dist. No. 1*, 554 U.S. 527, 532 (2008) (explaining that FERC has broad discretion to determine rates and it is not the court's place to disturb the agency's determination). Here, too, the agency has expertise and broad discretion. The Supreme Court has explained that "[j]udicial deference in the immigration context is of special importance." *Negusie v. Holder*, 555 U.S. 511, 516-17 (2009); *see also INS v. Aguirre-Aguirre*,

3

**IMMIGRATION REFORM LAW INSTITUTE'S *AMICUS CURIAE* BRIEF,**
*Immigrant Legal Res. Ctr. v Wolf,* **No. 4:20-cv-05883-JSW**

526 U.S. 415, 425 (1999) ("The judiciary is not well positioned to shoulder primary responsibility for assessing [immigration decisions made by the Attorney General].").

As DHS notes in the Final Rule, its "authority [to impose the fees in question] is in several statutory provisions" under the Immigration and Nationality Act ("INA") that authorize the administration and enforcement of U.S. immigration laws by DHS's subagencies. *See* 85 Fed. Reg. at 46,789; *see also* 8 U.S.C. § 1103 (establishing the powers and duties of the Secretary of Homeland Security under the INA), and the Homeland Security Act ("HSA"), 6 U.S.C. § 112 (establishing the position, powers, and duties of the Secretary of Homeland Security). The INA further empowers DHS to charge and collect user fees in order to "ensure recovery of the full costs," of adjudicating immigration benefits, 8 U.S.C. § 1356(m), and mandates the appropriation of user fees collected for the expenses of immigration adjudications, 8 U.S.C. § 1356(n). In addition, the Office of Management and Budget ("OMB") requires that all agency Chief Financial Officers "review, on a biennial basis, the fees, royalties, rents, and other charges imposed by the agency for services and things of value it provides, and make recommendations on revising those charges to reflect costs incurred by it in providing those services and things of value." 31 U.S.C. § 902(a)(8). *Amicus* IRLI respectfully submits that the prior failure to collect these mandated fees was arbitrary and capricious, and that "[a]rbitrary agency action becomes no less so by simple dint of repetition." *Judulang v. Holder*, 565 U.S. 42, 61 (2011). The Final Rule corrects a prior error.

The Final Rule thus was promulgated under the congressionally delegated authority given to the DHS and is based on its "comprehensive" review of costs and fees for FY 2019/2020. 85 Fed. Reg. at 46,794. It also "accounts for, and is consistent with, congressional appropriations for specific USCIS programs." *Id.* Such "examin[ation] of the relevant considerations," for which it "articulated a satisfactory explanation . . . including a rational connection between the facts found

and the choice made," *Elec. Power Supply Ass'n* 136 S. Ct. at 782, reflects reasonable "judgments about areas that are within the agency's field of discretion and expertise," *BNSF Ry. Co. v. Surface Transp. Bd.*, 526 F.3d 770, 781 (D.C. Cir. 2008) (internal citation omitted). DHS explained that it issued the Final Rule because the FY 2019/2020 biennial review revealed "that current fees do not recover the full cost of providing adjudication and naturalization services," as required. 85 Fed. Reg. 46,788. Where DHS, or any agency, determines that statutorily required fees are not being assessed, it can be neither arbitrary nor capricious to implement changes to comply with the law.

In situations such as this, it is paramount that the courts "defer to the agency's expertise in identifying the appropriate course of action," *California v. Azar*, 950 F.3d 1067, 1096-1097 (9th Cir. 2020) instead of substituting their own views and opinions. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019) (holding that the court cannot "substitute [its] judgment" or "second-guess[] the weighing of risks and benefits"). Furthermore, an agency is empowered to make or alter an earlier policy as long as it "provide[s] reasoned explanation for" the change and "there are good reasons for the new policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514-515 (2009). Here, DHS, being required to self-fund, determined that the fees it was collecting were insufficient to cover adjudication costs, and acted accordingly. Because DHS has followed an identifiable and reasoned decision process, this Court should not find the Final Rule arbitrary and capricious.

Plaintiffs assertion that the Final Rule is a pretextual attempt to deter new applicants and create barriers is also without merit. The Final Rule is intended to collect statutorily required user fees for immigration benefit adjudications following a finding by DHS that current fees are below required levels. 85 Fed. Reg. at 46,788. The Final Rule also reflects DHS's attempt to meet its statutory requirements to self-fund through user-fees. Furthermore, the agency made efforts to

5

**IMMIGRATION REFORM LAW INSTITUTE'S *AMICUS CURIAE* BRIEF,**
*Immigrant Legal Res. Ctr. v Wolf*, **No. 4:20-cv-05883-JSW**

alleviate some of the financial burden on asylum and withholding of removal applicants by only charging a $50 fee, which is "well below the estimated cost of adjudication." *Id.* The fact that such fees may dissuade some aliens from seeking such benefits does not supersede DHS's rational and reasoned explanations for the new fees. *See Dep't of Commerce*, 139 S. Ct. at 2579-80 (explaining that "a showing of pretext could render an agency action arbitrary and capricious only in the infinitesimally small number of cases in which the . . . stated rational did not factor *at all* into the decision, thereby depriving the action of an adequate supporting rationale."). Here, a more-than-adequate supporting rationale is obvious. The Final Rule "ensure[s] that USCIS has the resources it needs to provide adequate service to applicants and petitioners." 85 Fed. Reg. at 46,788.

**B.   The imposition of fees is consistent throughout the INA and federal law, which requires agencies to be self-sustaining as much as possible.**

It is well established that the "cardinal rule" of statutory interpretation requires reading the statute as a whole instead of analyzing each provision in isolation. *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("The meaning of statutory language, plain or not, depends on context."); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51 (1987) ("[I]n expounding a statute, we . . . look to the provisions of the whole law, and to its object and policy."); *accord Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999); *see also United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2014) ("We also look to similar provisions within the statute as a whole . . . to aid interpretation.").

The INA explicitly authorizes the collection of user fees for adjudication of immigration benefits. 8 U.S.C. § 1356. Because the INA also authorizes fees in other provisions, *see, e.g.,* 8 U.S.C. § 1351 (authorizing fees for visa applications); 8 U.S.C. § 1254a(c)(1)(B) (authorizing the collection of fees for registration under temporary protected status); 8 U.S.C. § 1254b(a) (authorizing "fees for fingerprinting services, biometric services, and other necessary services" in

connection with temporary protected status registration), it is clear that Congress intended the collection of fees from aliens to be part of the immigration process generally. When the Final Rule is read in the context of the entirety of the statute, it is even more obvious that it is consistent with the INA.

Furthermore, Congress has explicitly decreed that agency services should "be self-sustaining to the extent possible." 31 U.S.C. § 9701(a). Agency heads are authorized to establish fees as long as they are "fair" and are determined by "the costs to the Government; the value of the service . . . public policy or interest served; and other relevant facts." 31 U.S.C. § 9701(b)(1)-(2). When, as here, a biennial review shows that immigration benefit fees are insufficient to allow the agency to be self-sustaining, the only right and logical solution is to increase or impose additional fees.

  **C.** **The Final Rule does not violate the government's obligations under the Convention Against Torture.**

Plaintiffs' fears that DHS will violate aliens' rights with respect to withholding of removal and nonrefoulement are without merit. EOIR has properly exempted applications for withholding of removal ("WOR") and Convention Against Torture ("CAT") relief, as well as motions and appeals based on such non-discretionary protections, from the imposition of user fees. *See* 85 Fed. Reg. 46,788, 46,790 (listing several instances in which fee waivers are available).

The United States nonrefoulement obligation requires that "it must not expel or return a refugee to a country where his life or freedom would be threatened on account of his race, religion, nationality, membership [in] a particular social group or political opinion." *Yusupov v. AG of the United States*, 518 F.3d 185, 203 (3d Cir. 2008); *see also* Convention Against Torture, art. 33.1. The Refugee Act of 1980 reflects Congress's intent that refugees should be protected to the fullest extent required by international obligations. *Yusupov* 518 F.3d at 203. Nonrefoulement under

7

**IMMIGRATION REFORM LAW INSTITUTE'S *AMICUS CURIAE* BRIEF,**
*Immigrant Legal Res. Ctr. v Wolf,* **No. 4:20-cv-05883-JSW**

CAT, however, is not without exceptions. For example, "a refugee whom there are reasonable grounds for regarding as a danger to the security of the country in which he is" may be refused a grant of asylum. Convention, art. 33.2.

The fees implemented by the Final Rule do not conflict with these obligations because of the above-stated fee waivers and exceptions. In response to a comment on nonrefoulement, DHS explained that the INA explicitly authorizes asylum application fees, which are "in line with domestic implementing law and do[] not contravene international treaty obligations." 85 Fed. Reg. at 46,848. Furthermore, as noted, the new fees do not apply to aliens submitting applications "for the sole purpose of seeking withholding of removal under [the] INA . . . or protection from removal under" CAT obligations. *Id.* at 46,793.

Finally, Plaintiffs' claims that the fees are "not intended for cost recovery but deterrence," Pls. Memo. at 8, are incorrect and irrelevant to the government's CAT obligations. As has been shown, the fees are statutorily mandated and are exempted or waived where required.

## II. THE REMAINING *WINTER* FACTORS WEIGH AGAINST PLAINTIFFS.

Given that Plaintiffs cannot prevail on the merits, this Court should deny their motion without considering the remaining *Winter* factors. Even so, the additional *Winter* factors further support denying Plaintiffs' motion.

### A. The balance of equities favors DHS.

The balance of equities weighs heavily in Defendants' favor. Defendants' implementation of their statutory obligations to impose fees for certain discretionary relief will help properly fund the agencies that provide immigration benefits, thus benefitting applicants and taxpayers while still preserving fee waivers for nondiscretionary relief.

### B. The public interest favors DHS.

The paramount public interest for EOIR is that applications for relief are processed effectively enough that caseload backlogs are minimized. That goal best serves citizens and qualified applicants alike. Also, immigration relief is notorious among federal benefits agency adjudications for its applicants' perverse incentive to seek delay in processing their case, an incentive lacking in those seeking such government benefits as social security, veterans, or Medicaid benefits. Fortuitously, the fees imposed by the Final Rule seem likely to reduce the number of defective or frivolous applications for relief filed purely to provide aliens with the additional benefit of delay, by months or even years, of their ultimate removal or departure under a final order.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be denied.

Dated: September 9, 2020                                Respectfully submitted,

  /s/ Lawrence J. Joseph
Lawrence J. Joseph (SBN 154908)

Law Office of Lawrence J. Joseph
1250 Connecticut Ave, NW, Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amicus Curiae U.S. Tech Workers*

9

**IMMIGRATION REFORM LAW INSTITUTE'S *AMICUS CURIAE* BRIEF,**
*Immigrant Legal Res. Ctr. v Wolf,* **No. 4:20-cv-05883-JSW**