1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMIGRANT LEGAL RESOURCE CENTER, et al., | Case No.  20-cv-05883-JSW |
| Plaintiffs, | **NOTICE OF QUESTIONS FOR HEARING** |
| v. | Re: Dkt. No. 27 |
| CHAD F. WOLF, et al., | |
| Defendants. | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING QUESTIONS FOR THE HEARING SCHEDULED ON SEPTEMBER 25, 2020, AT 9:00 a.m.: The Court has reviewed the parties' briefs and, thus, does not wish to hear the parties reargue matters addressed in those briefs.  If any counsel for the groups that have submitted amicus briefs wish to participate in oral argument, they must register to participate as attendees in the hearing.  **The Court reserves the right to publish additional questions in advance of the hearing.**

If the parties intend to rely on legal authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel by filing those authorities or citations to the record by no later than Tuesday, September 22, 2020 at 12:00 p.m.  The Court will allow for exceptions in the event authority is issued *after* that date and time.  If the parties submit such additional legal authorities, they are ORDERED to submit the citations (including the pin citations) and attach any new authority cited to their submission, but they are not to include additional argument or briefing. *Cf.* N.D. Civil Local Rule 7-3(d).  The parties will be given the opportunity at oral argument to explain their reliance on such authority.

1. In the event the Court is unable to issue an opinion prior to the October 2, 2020 effective date of the Final Rule, despite its best efforts to do so, do Defendants agree the Court would still have the power to stay enforcement of the Final Rule after it has gone into effect?  *See,* 5 U.S.C. § 705; *Casa de Maryland v. Wolf*, No. 8:20-cv-02118-PX, 2020 WL 5500165, at *8, *13 (D. Md. Sept. 11, 2020) ("*CASA*").

2. The Court understands Defendants' position on the order of succession issue to be that: (1) Defendants' Exhibit 1 ("April 9 Order"), reflected Secretary Nielsen's intent to modify the order of succession for all purposes, not just in the event of a disaster or an emergency, and that the April 9 Order effectuated that intent, notwithstanding the language set forth in Defendants' Exhibit 2 ("Delegation 00106, Revision 8.5"), such that the April 9 Order superseded the order of succession listed in Executive Order 13753 ("E.O. 13753").

    a. If the Court rejects Defendants' position, do Defendants dispute that the Final Rule would have been promulgated without authority and should be set aside as contrary to law?  If so, on what basis?

    b. What is the Government's best argument that the Court should not follow the reasoning set forth in *CASA* regarding the validity of Mr. McAleenan's and Mr. Wolf's assumption of the role of Acting DHS Secretary?  *See CASA*, 2020 WL 5500165, at *20-*23.

3. Does Table 1 in the Final Rule reflect the universe of fees at issue?  If so, by the Court's count there are 52 fees to consider.  Plaintiffs do not address each of those fees in their briefs or in the declarations submitted to support their motion.  Instead, they highlight certain fees and the issue of fee waivers.  (*See, e.g.,* Dkt. No. 27-4, Benito Decl., ¶¶ 19-23, Dkt. No. 27-5, Byrne Decl., ¶¶ 19-23.)  In addition, the parties analyze the validity of the Final Rule as an all or nothing proposition.

    a. DHS states that "many parts of this final rule are interrelated, but most are severable and can be implemented independently from the remainder of this final rule's provisions."  85 Fed. Reg. at 46,868.  In light of that statement, does either party contend that this Court *must* resolve this case as an all or nothing proposition and, if so,

United States District Court
Northern District of California

on what basis?

b. Assuming severability, which of many fee increases do Plaintiffs argue are most harmful to their missions and the low-income immigrant populations they serve?

c. What is Plaintiffs' best argument that they have met their burden to show the change in each fee is arbitrary and capricious and that they would be harmed by changes to fees that do not appear to be applicable to the populations they serve?

4.      DHS asserts it "does not know the price elasticity of demand for immigration benefits, nor does [it] know the level at which the fee increases become too high for applicants/petitioners to apply." 85 Fed. Reg. at 46,797.  DHS then asserts it believes immigration to the United States remains attractive and that the benefits of immigration "continue to outweigh the costs noted by commenters." *Id.*  From there, DHS concludes it "believes the price elasticity for immigration services is inelastic and increases in price will have no impact on the demand … for all immigration services impacted by this rule." *Id.*  On what facts did DHS rely to form these beliefs and where in the record before the Court on this motion can the Court find those facts?

5.      The Final Rule also provides that applicants seeking asylum would be required to pay a non-waivable fee for their first employment authorization document ("EAD"), and it supports its "belief" that this fee will not impose an unreasonable burden on asylum seekers by noting that there is a statutory waiting period before an individual seeking asylum can work.  Did DHS take into consideration the enlargement of that waiting period, as described in *CASA*, when promulgating this Final Rule?

6.      Many, if not all, of the Plaintiffs state that they must meet certain deliverables to obtain – or retain – funding, and attest that if the Final Rule goes into effect it will impact their ability to meet those contractual obligations.  Plaintiffs also attest that at least some lost funding as well as lost productivity and opportunity costs cannot be compensated and that the fee increases threaten to render workshop business models unsustainable.  There also is some evidence that the Final Rule threatens the existence of at least some Plaintiffs' programs.  (Dkt. No. 27-6, Byun Decl., ¶ 26; Dkt. No. 27-10, Smith Decl., ¶ 37.)  *See, e.g., hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 992 (9th Cir. 2019).  In addition to these alleged injuries, Plaintiffs attest they are likely

to suffer harm to their reputation and good will.

What is Defendants' best argument that these harms are not irreparable?

7.     Do the parties anticipate that they would appeal the Court's Order?  If so, and arguing from the assumption that the ruling is adverse to them, what are the parties' best arguments in favor of the Court's Order staying its order while seeking a further stay from the Ninth Circuit?

**IT IS SO ORDERED.**

Dated: September 18, 2020

_____
JEFFREY S. WHITE
United States District Judge