Brian J. Stretch, SBN 163973
bstretch@sidley.com
Naomi Igra, SBN 269095
naomi.igra@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

Samina M. Bharmal (*pro hac vice*)
sbharmal@sidley.com
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, D.C. 20005
Telephone: +1 202 736 8000
Facsimile +1 202 736 8711

Jesse Bless (*pro hac vice*)
jbless@aila.org
AMERICAN IMMIGRATION LAWYERS
ASSOCIATION
1331 G Street NW
Washington, D.C. 20005

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IMMIGRANT LEGAL RESOURCE CENTER; EAST BAY SANCTUARY COVENANT; COALITION FOR HUMANE IMMIGRANT RIGHTS; CATHOLIC LEGAL IMMIGRATION NETWORK, INC.; INTERNATIONAL RESCUE COMMITTEE; ONEAMERICA; ASIAN COUNSELING AND REFERRAL SERVICE; ILLINOIS COALITION FOR IMMIGRANT AND REFUGEE RIGHTS,<br><br>Plaintiffs,<br><br>v.<br><br>CHAD F. WOLF, *under the title of Acting Secretary of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; KENNETH T. CUCCINELLI, *under the title of Senior Official Performing the Duties of the Deputy Secretary of Homeland Security*; U.S. CITIZENSHIP & IMMIGRATION SERVICES<br><br>Defendants. | Case No. 4:20-cv-05883-JSW<br><br>**PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Assigned to Hon. Jeffrey S. White<br><br>Date:        September 25, 2020<br>Time:        9:00 a.m.<br>Courtroom:   5, 2nd Floor<br><br>**JURY TRIAL DEMANDED** |

The Wolf Memo (ECF 80-1 Ex. 1) does not save the Final Rule (AR 477-618). Plaintiffs have multiple grounds for an injunction, ECF No. 27, and the Court need not address arguments Defendants failed to raise in their Opposition. ECF No. 49.[1] But if the Court addresses the eleventh-hour Wolf Memo, it should conclude Plaintiffs at least raise "serious questions," *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 1001(9th Cir. 2019), as to the validity of the Final Rule and the Wolf Memo.

## I. The Wolf Memo Has No Effect Because The Gaynor Order Has None.

The Gaynor Order (ECF 75-2 Ex. 1) purports to invoke authority Gaynor "may have" under "GAO's view." But "GAO's view" is that there has been no valid acting secretary since Nielsen resigned in April 2019. ECF 27-2 Ex. 2. In April 2019, Chris Krebs was next in line; Gaynor was not in office. Now, Wolf asserts he is Acting Secretary.[2] The Gaynor Order does not specify how or when a vacancy occurred between April 2019 and September 2020 making Gaynor "eligible to act" under Executive Order 13573, 81 Fed. Reg. 90667 ("EO"). That EO applies only to a person "eligible to act" under the Federal Vacancies Reform Act ("FVRA") when a Secretary "has died, resigned or otherwise become unable to perform the functions and duties"—not when an administration learns of "GAO's view."

When GAO expressed its view, Gaynor was not "eligible to act" because the office of Secretary had been vacant for more than 210-days. 5 U.S.C. § 3346(a)(1). The Wolf Memo implies Gaynor became eligible pursuant to "5 U.S.C. § 3345(a)(2), when the President submitted [Wolf's] nomination" on September 10.[3] Wolf Memo at 2. But 5 U.S.C. § 3345(a)(2) applies if an officer whose appointment must be "by and with the advice and consent of Senate, dies, resigns, or is otherwise unable to perform" – not if a nomination occurs. Defendants may claim they meant 5 U.S.C. § 334**6**(a)(2) but that only allows a nomination to extend service beyond 210 days for a person "serving . . . as described under section 3345."[4] It does not create a vacancy under 5 U.S.C. 3345(a)(2).

---

[1] Defendants' September 9th Opposition did not hint at an alternative defense that Gaynor could take steps he purports to have taken the very next day. The Court cannot assume it has all evidence relevant to that defense. It need not rule on an incomplete record and compressed briefing. The Court can grant Plaintiffs' Motion to prevent irreparable harm; Defendants can move to modify the injunction and the Court can rule on their new defense with the benefit of more time and full briefing.
[2] 5 U.S.C. § 3349 requires notification "immediately" upon a vacancy; if there was another moment a vacancy opened for Gaynor, no evidence shows when it was or that Defendants complied with § 3349.
[3] This raises questions on the sequence of events on September 10 that the documents do not answer.
[4] The clock is "tolled" for a person already serving during a nomination but only "reject[ion], withdraw[al], or return[]" will "start[] a new clock." *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 936 (2017)

1

1   The Gaynor Order also does not have its purported effect. The Gaynor Order states that upon
2   signature Gaynor's authority "will terminate <u>because</u> 6 U.S.C. § 113(g)(2) applies." But 6 U.S.C. §
3   113(g)(2) only permits a "Secretary" to designate a "further order of succession" for a vacancy. Even
4   assuming Gaynor could perform the function of a "Secretary,"[5] 6 U.S.C. § 113(g)(2) only permits
5   designation of a "*further* order of succession" beyond what is specified in 6 U.S.C. § 113(g)(1) in the
6   event of a vacancy. Designating a "*further* order of succession" does not "terminate"[6] the authority of
7   someone currently performing the duties of a Secretary under 5 U.S.C. § 3345(a)(2), such as Gaynor.

8   Finally, Wolf cannot succeed Gaynor because "a person may not serve as an acting officer for an
9   office under this section" if nominated for "such office." 5 U.S.C. § 3345(b)(1)(B). Defendants say 5
10  U.S.C. § 3345 does not apply to someone designated under 6 U.S.C. § 113(g),[7] but under 5 U.S.C. §
11  3347(a)(1), an agency-specific statute can "authorize" alternative "means" for designating someone to
12  serve in an acting capacity; that person still "serve[s] as an acting officer," 5 U.S.C. § 3345(b), and is
13  subject to the nomination bar.[8] *NLRB*, 137 S. Ct. at 938 n.2 (2017) ("Subsection (b)(1) addresses
14  nominations *generally*, prohibiting any person who has been nominated to fill any vacant office from
15  performing that office's duties in an acting capacity.") (emphasis in original).

16  **II.     The Wolf Memo Does Not Save The Final Rule Even If The Gaynor Order Is Effective.**

17  The Proposal and Final Rule were "action[s] taken by a person who [was] not acting under
18  section 3345, 3346 or 3347," they have "no force or effect"[9] and "may not be ratified." 5 U.S.C. §
19  3348(d)(1), (2). An "action" includes an "agency action." 5 U.S.C. § 3348(a)(1).[10] The Wolf Order

---

[5] 6 U.S.C. §113(g) uses "Acting Secretary" when it means "Acting Secretary" 6 U.S.C. §113(g)(1). The Court should not read "Secretary" to also mean "Acting Secretary" absent a clear statement. Cato Institute *Amicus* Curiae (Sept. 9, 2020), ECF No. 39.
[6] Gaynor also could not have exercised authority in the instant of signing if that terminated his authority.
[7] Vacancies under 6 U.S.C. §113(g) are vacancies "that require notification under sections 3345 through 3349(d) of [the FVRA]." 6 U.S.C. §113(g)(3). 6 U.S.C. §113(g) operates alongside the FVRA; it does not sweep away the FVRA "in its entirety," as Wolf Claims. Wolf Memo at 1. And courts "read the statutes to give effect to each." *Watt v. Alaska*, 451 U.S. 259, 267 (1981), whenever they are "capable of co-existence." *Morton v. Mancari*, 417 U.S. 535, 551 (1974).
[8] 5 U.S.C. 3345(b)(2) specifically identifies exceptions to the nomination bar; none apply here.
[9] Plaintiffs assert these actions are "void *ab initio*" not just voidable. *Cf. NLRB*, 137 S. Ct. at 938 n.2 (2017). *CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) is not like the situation here; it did not involve an "agency action" under 5 U.S.C. § 3348; did not implicate the APA's standards; and did not raise constitutional concerns because ratification was by a Senate-confirmed officer. *Guedes v. ATF* permitted ratification "<u>only</u> because it was undertaken" by a Senate-confirmed officer whose "authority to act" the plaintiff did not challenge. 920 F.3d 1, 16 (D.C. Cir. 2019) (emphasis added).
[10] 5 U.S.C.§ 3348(a)(1) is the specific provision that applies here and not 5 U.S.C.§ 3348(a)(2).

2

purports to ratify such actions "pursuant to . . . 5 U.S.C. §§ 301-302"[11] but those provisions do not override the remedy for "actions" by a person "not acting under 3345, 3346, or 3347."[12] DHS must issue a new proposed rule; ratification is not an option available to DHS.

In all events, the Proposal and Final Rule were "not issued 'in accordance with law,' and must [] be set aside under the APA." *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 34 (D.D.C. 2020). The invalid appointments are "serious violations of the APA" that justify vacating the rule.[13] *Becerra v. U.S. Dep't of the Interior*, 381 F. Supp. 3d. 1153, 1178 (N.D. Cal. 2019). This error is not harmless because the Court "cannot be confident" that Krebs would have made the same budget decisions or issued the same Proposal as McAleenan. *See L.M.-M.*, 442 F. Supp. at 35 (citations and quotations omitted).

### III. Interpreting the FVRA Consistent With Its Purpose Avoids Constitutional Concerns.

Defendants are attempting an end-run around the FVRA so Wolf can "continue to serve," Wolf Memo at 2, despite more than 500 days of service by unlawful officers and Wolf's pending nomination. To do this, Defendants must try to talk their way around time limits; a nominations bar; eligibility limitations; a no-ratification provision; and manufacture a moment at which Wolf's nomination, Gaynor's accession, his change in the order of succession, and the purported "termination" of his authority all happened at once. Any interpretation of the FVRA that permits this is inconsistent with the FVRA's purpose to "once and for all, put an end to [] ridiculous, specious, fallacious arguments that the Vacancies Act is nothing more than an annoyance to be brushed aside." 144 Cong. Rec. S11025 (daily ed. Sept. 28, 1998) (statement of Sen. Robert Byrd).  Any ambiguities should be resolved to constrain reliance on acting officers and avoid constitutional concerns that arise when statutory interpretation allows evasion of the Appointments Clause. ECF Nos. 38-39. These serious questions warrant an injunction.

---

[11] This is what the FVRA was meant to prevent. S. Rep. No. 105-250, at 5, 20 (1998) ("[T]he ratification approach taken in *Doolin*, [139 F.3d 704 D.C. Cir. 1996] would render [the FVRA] a nullity.").

[12] 5 U.S.C. § 3447(d) was meant to counter assertions that an "organic statute's 'vesting and delegation provision'" negated the FVRA. 144 Cong Rec. S11021 (daily ed. Sept 28, 1998)(statement of Sen. Fred Thompson); 144 Cong. Rec. S12823 (daily ed. Oct. 21 1998) (statement of Sen. Fred Thompson) ("[T]he organic statutes of the Cabinet departments do not qualify as a statutory exception to this legislation's exclusivity in governing the appointment of temporary officers.").

[13] Commenters pointed out that McAleenan lacked authority when he proposed the rule in November 2019. AR 493. DHS did not consider this important problem enough to include *any* relevant material in the AR; this too renders the Final Rule arbitrary and capricious agency action. Post-hoc justifications cannot cure APA violations. *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490 (1981).

Dated: September 23, 2020.

Jesse Bless (*pro hac vice*)
jbless@aila.org
AMERICAN IMMIGRATION LAWYERS
ASSOCIATION
1331 G Street NW
Washington, D.C. 20005

Respectfully submitted,

*/s/ Brian J. Stretch*

Brian J. Stretch, SBN 163973
bstretch@sidley.com
Naomi Igra, SBN 269095
naomi.igra@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

Samina M. Bharmal (*pro hac vice*)
sbharmal@sidley.com
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: +1 202 736 8000
Facsimile: +1 202 736 8711

*Attorneys for Plaintiffs*